### CAMP v. LAKE DRUMMOND CANAL & WATER CO.

(Circuit Court of Appeals, Fourth Circuit. July 21, 1908.)

No. 775.

WATERS AND WATER COURSES—ACTION TO DETERMINE WATER RIGHTS—LACHES —ACQUIESCENCE IN USE OF WATERS OF LAKE.

In 1784, the Governor of Virginia, pursuant to an order of council made in 1763, executed a grant of lands in the Dismal Swamp to a trustee for the Dismal Swamp Company, then a voluntary association, but afterward incorporated. In 1787, the Legislature chartered the Dismal Swamp Canal Company and authorized it to procure a supply of water for its canal by means of a cross-canal from Lake Drummond in the Dismal Swamp; the charter providing that "the said lake, so far as the waters thereof shall be necessary for the purposes aforesaid, shall be and is hereby vested in the proprietors of the said canal." In 1812, the cross-canal was constructed; an inquisition having been appointed on application of the Dismal Swamp Company, upon whose lands the lake was situated, to determine the value of the lands taken by such cross-canal,

which has ever since been maintained. *Held*, that the Dismal Swamp Company acquiesced in the appropriation of the waters of the lake by the canal company under the grant made in its charter, and, whatever its own rights therein may have originally been, it could not, nor could its grantees, after the lapse of 95 years, question the right of the canal company to take so much of said waters as might be necessary or useful for the purposes of its canal, nor maintain a suit in equity to enjoin such use.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

Robert M. Hughes and James H. Corbitt (Peatross & Savage, on the brief), for appellant.

Theodore S. Garnett and Theodore S. Garnett, Jr., for appellee.

Before PRITCHARD, Circuit Judge, and PURNELL and DAYTON, District Judges.

DAYTON, District Judge. William N. Camp, plaintiff below, and appellant here, on September 10, 1902, filed his bill against the Lake Drummond Canal & Water Company, a corporation, alleging in substance himself to be the owner of a tract of about 50,000 acres of land in Norfolk and Nansemond counties, Va., conveyed to him July 1, 1901, by the Dismal Swamp Land Company, which land was in part covered by a body of water known as "Lake Drummond," extending back into the forest on the sides and having no banks or natural outlets, but two artificial ones. The first of these artificial outlets is described as a large ditch on the northwest, wholly on the land of plaintiff and known as "Jericho Canal," formerly used by the owners of the land as a means of floating logs from the lake to the point of shipment. The second artificial outlet is described as a ditch of small size, about 4 to 6 feet wide and from 1 to 1½ feet in depth on the eastern side, extending from said lake to the canal of the defendant company. It is charged that the defendant is the owner of a canal extending from the southern branch of the Elizabeth river, in Virginia, to the head of the Pasquotank river, near South Mills, N. C., passing about 3½ miles eastward of Lake Drummond, and that near a century ago, when this canal was first dug by the predecessor of the defendant, the Dismal Swamp Canal Company, this small ditch from the eastern side of Lake Drummond was built to this canal without condemning in lawful manner; but as the water taken from the lake was inconsiderable, and but a small portion thereof was in contemplation of being taken, the owners of Lake Drummond did not object, but permitted the taking and use of the water to the extent contemplated and made possible by the size and depth of the original ditch. It is then alleged that the defendant company, successor of the Dismal Swamp Canal Company, has greatly enlarged, deepened, and lowered the bed of its main canal, thereby requiring a much greater volume of water and have likewise already widened and deepened this eastern ditch from Lake Drummond and are about to so widen and deepen it as to practically draw off the entire water supply from the lake. The use of this lake is set forth to be very valuable to plaintiff as a means of floating the

valuable cypress, juniper, gum, and pine timber which clothes the land, and serious and irreparable damages, it is charged, will accrue to plaintiff by reason of the withdrawal of the water as contemplated by the defendant company. An injunction was prayed restraining the defendant from widening or deepening the ditch, from drawing off or diminishing the quantity of water from the lake or lowering its water level. To this bill the defendant entered its demurrer, alleging the plaintiff's remedy, if any, to be at law and not in equity, and, without waiving this demurrer, filed its answer denying all the material allegations of the bill. To this answer general replication was entered, a mass of testimony was taken, and upon final hearing, on March 13 1906, the court below found the cause to be for the defendant and dismissed the bill.

In determining this appeal we do not deem it necessary to enter into a consideration of the conflicting testimony to ascertain whether the improvements made by the defendant company has or has not reduced the natural water level of Lake Drummond. Nor do we deem it necessary, no matter how fascinating the consideration might be, to discuss the legal rights of riparian owners to the waters of a natural pond or lake like this, for we are convinced that, independent of these considerations, the decision of the court below must be upheld for another reason, about which there can be little doubt or controversy. On December 1, 1787, the Legislature of Virginia incorporated the Dismal Swamp Canal Company. Among other provisions in this act were these:

"Sec. 16. And whereas, it is represented that the waters of the lake in the Dismal Swamp, commonly called Drummond's Pond, may be useful for a supply of water to the said canal.

"Sec. 17. Be it enacted, that the said lake, so far as the waters thereof shall be necessary for the purposes aforesaid shall be and is hereby vested in the proprietors of the said canal, and it shall and may be lawful for the said president and directors, or a majority of them, to open, if they shall find it expedient, a cross canal from the lake to the principal canal, for the purpose of drawing thence a supply of water; and for executing this work and keeping it in repair they shall have the same power which they are authorized to exercise in opening the principal canal. And it shall not be lawful for any person whatsoever so to cut off or divert the course of those waters which now flow from the westward into the said lake, as to prevent their continuing to fall into it."

Under this distinct legislative grant, in 1812, this canal company undertook the work of digging this ditch, feeder, or cross-canal from the lake to the main canal. Thereupon the Dismal Swamp Land Company (plaintiff's vendor) appeared before Robert Brough and Stephen Wright, two justices of the peace of Norfolk county, Va., by its president and directors, and represented:

"That the (canal) company's cross-canal from the lake to the principal canal, for the purpose of drawing from thence a supply of water, is intended to pass through land belonging or said to belong to ———, and no agreement hath been made with the others (owners) thereof."

Upon which representation a warrant was issued by these justices to the sheriff of the county requiring him to summon 18 inhabitants of the county, of property and reputation, not related to the parties

or interested, to meet on the lands on August 4, 1812, to value the same according to law. The sheriff executed this writ, 18 inhabitants, so summoned, did meet on the lands and reported under oath that they had "viewed the lands * * * through which the cross-canal leading from Drummond's Pond to the main Dismal Swamp Canal, which lands belong or are said to belong to ———, which said land is the width of 300 feet and containing 124½ acres (giving the boundaries as disclosed by a survey that day made by them) and the said jurors do value the said land at one cent. per acre, the quantity or proportion belonging to each individual to be hereafter ascertained." This inquisition was returned to court at Norfolk and ordered recorded.

It is undisputed: That this ditch, feeder, or cross-canal was thereupon dug in this year by the Dismal Swamp Canal Company and has been used from that day to this; that all the rights, privileges, and franchises of this company passed first to the Norfolk & North Carolina Canal Company, and from that company, by sale on July 30, 1892, to the defendant, the Lake Drummond Canal & Water Company.

The origin of the Dismal Swamp Land Company, from whom plaintiff derived his title, is of historical interest. On November 3, 1763, William Nelson, George Washington, Samuel Gist, and others entered into an agreement to undertake the securing of a grant from the commonwealth of Virginia of a large body of land in the Dismal Swamp, and by the agreement to fix the interests of each therein if the grant should be obtained. This resulted in a grant to Nathaniel and William Nelson, sons and devisees of William Nelson, deceased, executed by Benjamin Harrison, then Governor of Virginia, of 40,000 acres, on October 20, 1784, based upon an order of Council dated November 1, 1763, to William Nelson, Sr., "and others as members of the Dismal Swamp Company." This company seems to have been given a charter by the Legislature in 1814, which was modified by another legislative act approved February 13, 1877. Thus it appears that by grant in 1784 the title to the land passed from the commonwealth to the Nelsons as trustees for the Dismal Swamp Land Company, then a voluntary association of individuals, afterwards constituted a corporation, and that afterwards the Legislature of the state in 1797 vested in the canal company the waters of the lake "so far as the waters thereof shall be necessary" for its purposes. The question as to what rights to the water vested in the land company under the grant, and what under the legislative act in the canal company, might have caused a very interesting controversy in 1812, when this cross-canal was built. It can no longer be so. Time and the action of the parties themselves have long since settled it. If the land company had any superior right to this water and to dispute or to deny the legislative grant of it, it was plainly its duty to do so within a reasonable time. Laches in asserting such claim in a court of equity can be asserted here in defense, just as effectively as in the hundreds of other instances where equity so promptly recognizes it as a complete bar. Certainly, where the public interests are involved, as they are here, in support of the maintenance of this

work of internal improvement, we should not any the less hesitate to recognize this defense; but not only laches clearly appears, but complete acquiescence in this legislative act also appears. If not, why did the Dismal Swamp Company apply for the inquisition to assess the value of the land to be taken from it and others upon which to dig the ditch without asserting any claim of damages for the water to be taken? Then was the time to assert such right, if any existed, not now after the lapse of 95 years of acquiescence. Nor can it be said that the canal company must be limited in the taking and using of this water to the amount they have heretofore used. It did not undertake originally to take it under such conditions, but under the terms of the legislative act. No right remained in the land company to dictate the amount to be taken. It knew at the time, and during all these years, that the canal company was taking under the legislative grant, and it knew the terms of that grant. It had at the time to either acquiesce in the grant, subordinate its superior right, if it was superior, to it, or contest it within a reasonable time. It clearly concluded to do the former, and it is now entirely too late for it or its vendee to deny that:

"The said lake, so far as the waters thereof shall be necessary for the purposes aforesaid, shall be and is vested in the proprietors of the said canal, * * * and it shall not be lawful for any person whatsoever so to cut off or divert the course of those waters which now flow from the westward into the said lake, as to prevent their continuing to fall into it."

The decree of the court below is affirmed.
Affirmed.